# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANTHONY BAILEY,
      Plaintiff

      v.

ESPN, INC.,
      Defendant.

Case No. 3:14-cv-01509 (VAB)

## RULING AND ORDER

Plaintiff, Anthony Bailey, brings this action against ESPN, Inc., Plaintiff's former employer.  Specifically, Mr. Bailey seeks damages relating to the termination of his employment by ESPN, asserting causes of action in nine separate counts in his Amended Complaint (the "Complaint").  Defendant now moves to dismiss seven counts of the Complaint under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted.  [Doc. No. 23].  For the reasons set forth below, the Court hereby GRANTS in part and DENIES in part this motion.

## I.       LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (citations omitted).  When deciding a Rule 12(b)(6) motion to dismiss, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief.  *Ashcroft v. Iqbal*, 556

U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557 (2007). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## II.  DISCUSSION

ESPN moves to dismiss Counts One, Two, Five, Six, Seven, Eight, and Nine of the Complaint. For the following reasons, the Court grants the motion to dismiss Count Eight and Count Nine, denies the motion to dismiss Count Five and Count Seven, and grants in part and denies in part the motion to dismiss Count One, Count Two, and Count Six.

### A.    Claim for Tortious Interference with Business Expectancy/Contractual Obligations (Count Nine)

Defendant moves to dismiss Plaintiff's claim for tortious interference and Plaintiff does not oppose this portion of Defendant's motion. Therefore, the Court dismisses Count Nine of the Complaint.

**B.      Claim for Intentional Infliction of Emotional Distress (Count Eight)**

Mr. Bailey alleges that the ESPN's actions were intentional and extreme and outrageous in nature, were intended to and did cause him severe emotional distress, and caused him to incur damages.  He further alleges that ESPN knew or should reasonably have known that its actions would cause him severe emotional distress.  ESPN argues that this claim should be dismissed because Mr. Bailey has failed to allege facts that constitute extreme and outrageous conduct. The Court agrees.

Under Connecticut law, four elements must be established to prevail under a claim for intentional infliction of emotional distress: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000) (internal quotation marks and citation omitted).  "In order to state a cognizable cause of action, Plaintiff must not only allege each of the four elements, but also must allege facts sufficient to support them." *Golnik v. Amato*, 299 F. Supp. 2d 8, 15 (D. Conn. 2003).  "Mere conclusory allegations are insufficient as a matter of law to support a cause of action for intentional infliction of emotional distress." *Huff v. W. Haven Bd. of Educ.*, 10 F. Supp. 2d 117, 122 (D. Conn. 1998).

"Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine.  Only where reasonable minds disagree does it become an issue for the jury." *Appleton*, 254 Conn. at 210 (citations omitted). "The general rule is that there is liability for conduct exceeding all bounds usually tolerated by a

decent society, of a nature which is especially calculated to cause, and does cause, mental

distress of a very serious kind." *Golnik*, 299 F. Supp. 2d at 15 (internal quotation marks and

citations omitted).

> 'Liability has been found only where the conduct has been so outrageous in
> character, and so extreme in degree, as to go beyond all possible bounds of
> decency, and to be regarded as atrocious, and utterly intolerable in a civilized
> community.  Generally, the case is one in which the recitation of the facts to an
> average member of the community would arouse his resentment against the actor,
> and lead him to exclaim, "Outrageous!"'

*Appleton*, 254 Conn. 205, 210-11 (quoting 1 Restatement (Second), Torts § 46, cmt. (d), p. 73

(1965)).  Connecticut courts have been reluctant to allow claims for intentional infliction of

emotional distress, even in cases involving significant employment-related activities, and in

applying Connecticut law, federal courts in this District have interpreted the extreme and

outrageous requirement strictly.  *See Golnick*, 299 F. Supp. 2d at 15-16 (collecting cases); *Lopez-

Salerno v. Hartford Fire Ins. Co.*, No. 3:97-cv-273, 1997 WL 766890, at *7, 1997 U.S. Dist.

LEXIS 19724, at *19-21 (D. Conn. Dec. 8, 1997) (same).

"There is no bright line rule to determine what constitutes extreme and outrageous

conduct sufficient to maintain an action as the court must look to the specific facts and

circumstances of each case in making its decisions." *Menon v. Frinton*, 170 F. Supp. 2d 190,

198 (D. Conn. 2001) (internal quotation marks and citation omitted).  However, "[c]ertain

principles have emerged in the context of employer/employee relationships which guide the

analysis.  A court evaluates whether '. . . the employer's conduct, not the motive behind the

conduct, [is] extreme or outrageous.'" *Armstead v. Stop & Shop Companies, Inc.*, No. 3:01-cv-

1489, 2003 WL 1343245, at *5, 2003 U.S. Dist. LEXIS 4107, at *14 (D. Conn. Mar. 17, 2003)

(citations omitted) (alterations in original).  Thus, claims of employer misconduct that challenge

motive or intent are dismissed unless the manifesting conduct is itself outrageous or extreme.

Furthermore, "[e]ven conduct which is unlawful may not be labeled 'extreme and outrageous' unless it has a natural tendency to have an extraordinarily negative effect upon the emotional well-being of any person who is exposed or subject to it." *Hamilton v. Town of Hamden*, No. 3:08-cv-164, 2008 WL 4999301, at *10, 2008 U.S. Dist. LEXIS 94242, at *26 (D. Conn. Nov. 19, 2008) (internal quotation marks and citation omitted).

Viewing the allegations in the light most favorable to the Plaintiff, the Court finds that the conduct of the Defendant, as alleged in the Complaint, does not constitute extreme and outrageous conduct under the law. Mr. Bailey alleges that ESPN first computed the amount of bonuses and benefits to which he was entitled, and then almost immediately terminated him without cause in order to avoid paying him. The termination itself is not a sufficient basis for an intentional infliction of emotional distress claim. *See Craig v. Yale Univ. Sch. of Med.*, 838 F. Supp. 2d 4, 10 (D. Conn. 2011) ("Generally, personnel actions . . . that fall[] within the reasonably expected 'vicissitudes of employment,' . . . even if unlawful, are usually not deemed extreme and outrageous conduct."). Neither is ESPN's alleged motive of depriving Mr. Bailey of the payments and benefits that were shortly to become due to him. *See Parsons v. United Technologies Corp., Sikorsky Aircraft Div.*, 243 Conn. 66, 88-89 (1997) ("The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior."). Moreover, Plaintiff has pointed to no case law holding an employer liable for intentional infliction of emotional distress for terminating an employee shortly after calculating the amount of compensation to which the employee was about to become entitled.

Finally, there are cases in which similar conduct was found not to satisfy the requirement of extreme and outrageous conduct. *E.g.*, *Lopez-Salerno*, 1997 WL 766890, at *7, 1997 U.S. Dist. LEXIS 19724, at *19 (finding termination of plaintiff "just as she should have become

eligible for long term disability benefits" not to be extreme and outrageous conduct); *Emanuele v. Boccaccio & Susanin, Inc.*, No. CV 90-0379367 S, 1992 WL 79823, at *3-4, 1992 Conn. Super. LEXIS 992, at *8-10 (Conn. Super. Ct. Apr. 10, 1992) (finding allegations that plaintiff was terminated for false and non-existent reasons to deprive her of benefits and compensation, and in contravention of employer's procedure, insufficient to establish employer's conduct as extreme and outrageous).

For all of these reasons, the motion to dismiss is GRANTED with respect to Count Eight.

**C.      Claim for Termination in Violation of ERISA (Count Five)**

The Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, is designed to regulate employee welfare and pension benefit plans.  The Second Circuit "require[s] the exhaustion of administrative remedies for the denial of ERISA benefits." *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003).  Because Count Five of the Complaint alleges a cause of action under ERISA and Mr. Bailey has not alleged that he pursued administrative remedies, ESPN argues that this count should be dismissed under Rule 12(b)(6). The Court disagrees and this claim will survive ESPN's motion to dismiss.

Count Five of the Complaint is titled "ERISA – Pension Plan," and alleges that "[t]he defendant terminated the plaintiff to avoid paying the plaintiff the supplemental retirement pension plan which would have afforded the plaintiff a significantly more valuable retirement pension that was to become due."  Compl. ¶57.  This language unambiguously asserts a statutory claim squarely under § 510 of ERISA, which prohibits the discharge of any participant or beneficiary of an ERISA plan "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  ESPN suggests

that this count is instead a claim for "breach of the terms of the 'Supplemental Pension/Retirement Plan.'"  No such allegation, however, appears anywhere in the Complaint.

ESPN appears to argue further that because Count Five cites § 502(a)(1)(B),[1] it must still be construed as a claim for benefits requiring exhaustion of administrative remedies.  While § 502(a)(1)(B) is not probative of Mr. Bailey's claim, it does not render the claim for relief defective.

> Federal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief []; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. . . .  Having informed [defendant] of the factual basis for their complaint, [plaintiffs] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.

*Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346, 347 (2014) (internal quotation marks and citations omitted); *see also Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. . . .  Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations. . . .  [T]he complaint need not identify a legal theory, and specifying an incorrect theory is not fatal."); *United States v. Provident Nat. Bank*, 259 F. Supp. 373, 376 (E.D. Pa. 1966) ("If, in . . . a complaint, there also appears a reference to an irrelevant statute, or if no statute is mentioned, the Court need only take judicial notice of the relevant statute.").[2]

---

[1] This subsection merely provides that participants or beneficiaries of ERISA plans are empowered to bring civil actions to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).

[2] Under § 502(a)(3), ERISA plan participants and beneficiaries are empowered to bring civil actions for appropriate equitable relief to redress violations of any provision of ERISA.

ESPN does not contest that Mr. Bailey has alleged sufficient facts to establish a plausible claim for relief under § 510, other than his failure to allege exhaustion of administrative remedies.  Further, as ESPN acknowledges, "[d]istrict courts in the Second Circuit have drawn a distinction between claims relating to violations of the terms of a benefit plan, and claims relating to statutory violations of ERISA, finding that the former, but not the latter, claims must be administratively exhausted."  Doc. No. 23-1, at 5 (quoting *Diamond v. Local 807 Labor Mgmt. Pension Fund*, 595 F. App'x 22, 24 (2d Cir. 2014) (internal quotation marks omitted)).[3]

The Court finds that Count Five of the Complaint alleges a statutory violation of § 510 of ERISA, and, because there is no requirement in the Second Circuit to allege administrative exhaustion for such a claim,[4] DENIES Defendant's motion to dismiss Count Five.

### D.      Preemption of State Common Law Claims (Counts One, Two, Six, Eight)

In this action, Plaintiff asserts state common law claims for breach of implied contract, promissory estoppel, breach of the implied covenant of good faith and fair dealing, and intentional infliction of emotional distress.  Section 514 of ERISA provides that, with certain exceptions not relevant here, the provisions of ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan[.]"  29 U.S.C.A. § 1144.  This preemption provision "embrace[s] common law claims and other

---

[3] ESPN pointed to Seventh and Eleventh Circuit case law that does require administrative exhaustion even for statutory ERISA claims, *see* Doc. No. 37, at 4-5, and raised for the first time at oral argument the theory that the benefit plans in this case included explicit language requiring such exhaustion, but has not actually identified any such provision describing administrative procedures under which Plaintiff could have sought relief for his "discharge . . . for the purpose of interfering with the attainment of" his pension rights.  29 U.S.C. § 1140.  Rather, the plan language produced by Defendant merely provides for claims procedures for appealing claims for benefits that have been denied.  *See* Doc. Nos. 23-3, 23-4.  Even if this Court were to adopt the law of the Seventh and Eleventh Circuits, rather than following the precedent of district courts in the Second Circuit and the majority rule of the Third, Fourth, Fifth, Sixth, Ninth, and Tenth Circuits, the administrative exhaustion requirement would not be applicable in this case because there was no administrative remedy available to be exhausted.

[4] In addition, "[i]mplicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust."  *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir.), *cert. denied*, 134 S. Ct. 241 (2013).  ESPN has not pointed to any administrative procedures through which Mr. Bailey could have sought relief for his allegedly wrongful termination in violation of § 510.

judicially created law." *Collins v. S. New England Tel. Co.*, 617 F. Supp. 2d 67, 71 (D. Conn. 2009). However, the Court must "address[] claims of pre-emption with the starting presumption that Congress does not intend to supplant state law" and "on the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 655 (1995).

The Supreme Court has laid out a two-part inquiry to determine if a state law "relate[s] to" a covered employee benefit plan for purposes of § 514(a): "if it [1] has a connection with or [2] reference to such a plan." *California Div. of Labor Standards Enforcement v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 324 (1997) (internal quotation marks and citation omitted). "[T]o determine whether a state law has the forbidden connection, [a court must] look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Id.* at 325 (internal quotation marks and citations omitted). The Second Circuit has provided the following guidance on those objectives:

> Congress intended ERISA to establish the regulation of employee-benefit plans as an exclusively federal concern. Specifically, Congress aimed 'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law." This minimizes the administrative and financial burdens of complying with conflicting directives from the states, and between the states and the federal government. This was designed to prevent a conflict of substantive law that would require tailoring 'plans and employer conduct to the peculiarities of the laws of each jurisdiction.' In sum, the 'basic thrust of the pre-emption clause, then, was to avoid multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans,' and to prevent frustrating plan administrators' obligations to calculate uniform benefit levels nationwide.

*Hattem v. Schwarzenegger*, 449 F.3d 423, 429 (2d Cir. 2006) (citing and quoting *Travelers*; internal citations omitted). As to the second part of the inquiry, "[w]here a State's law acts

immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is

essential to the law's operation . . . that 'reference' will result in pre-emption."  *Dillingham*, 519

U.S. at 325.

> **1.      Breach of Implied Contract (Count One); Promissory Estoppel (Count Two); Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Six)**

Mr. Bailey's claims for breach of an alleged implied employment contract, promissory

estoppel, and breach of the implied covenant of good faith and fair dealing are distinct from his

claim under § 510 of ERISA.  As the parties agreed during oral argument on this motion on July

10, 2015, Counts One, Two, and Six of the Complaint are only partially preempted by ERISA.

The existence of an ERISA plan is clearly essential to the specific portion of these claims

seeking damages for Mr. Bailey's lost pension benefits and credits, as the specific terms of the

covered pension plan would be essential to making out this portion of the claim.  Therefore, the

motion to dismiss Counts One, Two, and Six is GRANTED insofar as the claims relate to

damages for lost pension benefits and credits and DENIED as to the remainder of the claims.

> **2.      Intentional Infliction of Emotional Distress (Count Eight)**

Because the Court has already found that this count fails to state a claim upon which

relief may be granted based on analysis of the substantive state law, *see supra* Section II.B, it

need not reach the question of whether Mr. Bailey's Intentional Infliction of Emotional Distress

claim is preempted by ERISA.

> **E.      Defamation Claim (Count Seven)**

Mr. Bailey alleges that, during the 2014 school year, ESPN informed parents at his

children's school that he was terminated for embezzling $15 million, knowing that this

information was false or recklessly disregarding whether it was false, and that his reputation

suffered injury as a result of the statement.  He alleges that these false statements were then communicated by these parents, including Kim Dobie, to school personnel, including some who volunteered with Mr. Bailey's wife on school fundraising efforts.  These school employees, in turn, informed the school's principal of the alleged defamatory statements, and the principal thereafter required that Mr. Bailey and his wife engage in discussions with him regarding the statements that had allegedly been made against Mr. Bailey.

ESPN argues that this claim should be dismissed for the Complaint's failing to specifically identify the current or former ESPN employee who made the alleged statements against Mr. Bailey and any of the other "multiple" parents, aside from Kim Dobie, to whom these statements were allegedly made.  However, given the allegations made in the Complaint, this additional degree of specificity is not required at this stage of the litigation.

"Under Connecticut law, to establish a prima facie case of defamation a plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 364 (D. Conn. 2014) (internal quotation marks and citation omitted); *see also Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28 (Conn. 2009).  Plaintiff has alleged facts that go to each of these elements.

The pleading of claims for defamation is governed by the liberal standards of Rule 8, Fed. R. Civ. P., and not a more heightened standard.  *See Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986).  "The test of a [defamation] complaint's sufficiency is whether it is detailed and informative enough to enable defendant to respond and to raise the defense of res judicata if appropriate. . . .  The central concern is that the complaint afford defendant sufficient notice of

the communications complained of to enable him to defend himself." *Id.* (internal quotation marks and citations omitted).  In order to provide such sufficient notice, a plaintiff must plead what defamatory statements were made concerning the plaintiff, when they were made, and to whom they might have been made.  *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997); *see also U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 109 (D. Conn. 2006) (defamation plaintiff "must at least plead the content of the alleged communications, when they were made, the context in which they were made, or by and to whom they were made").

ESPN has identified a case dismissing a defamation claim, solely on the basis of the plaintiff's failure to identify the anonymous employee or agent of the defendant responsible for making the allegedly defamatory statement.  *Neal v. Asta Funding, Inc.*, No. 13-cv-2176, 2014 WL 3887760, at *3, 2014 U.S. Dist. LEXIS 113142, at *6 (S.D.N.Y. June 17, 2014).  The cases cited in *Neal* to support its holding, however, involve complaints with allegations of a more vague and conclusory nature, in which multiple pleading deficiencies were identified.[5] Moreover, while Connecticut courts require a greater degree of pleading specificity for defamation claims than the Federal Rules, even they do not require that a complaint specifically

---

[5] *See In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 484 (S.D.N.Y. 2013) (dismissing claim based on allegations that defendants "repeatedly and publicly" made defamatory statements about plaintiff and undertook "a strategy of prejudicing the reputation and credibility" of plaintiff among plaintiff's subagents "and within the telecommunications community" for failing to "put forth any *nonconclusory* factual allegations regarding the publication of such defamatory statements to third parties," including "*who* affiliated with Verizon made such statements, *to whom* such statements were made, and *how* they were communicated); *Camp Summit of Summitville, Inc. v. Visinski*, No. 06-cv-4994, 2007 WL 1152894, at *10-12, 2007 U.S. Dist. LEXIS 28496, at *30, *36 (S.D.N.Y. Apr. 16, 2007) (dismissing claim based on allegations that summer camp sent defamatory written communications "to 2006 summer campers and/or their parents or guardians" and had "verbal conversations with certain parents or guardians of campers" in which it made defamatory statements because the complaint "neither alleges who at Camp Summit made the defamatory remarks, nor to whom the comments were made"); *Rafferty v. Halprin*, No. 90-cv-2751, 1991 WL 148798, at *7-8, 1991 U.S. Dist. LEXIS 10344, at *22, *24 (S.D.N.Y. July 26, 1991) (holding defamation claim to be "pleaded in so vague and conclusory a fashion as to fail to satisfy . . . Rule 8(a)" where complaint alleged "without giving any detail, that the 'defendants' have made false and defamatory statements to the press and 'potential employers of plaintiff'" and alleged "no details with respect to the source, timing or substance of any derogatory statements").

identify the unknown individual agent or employee of a corporate defendant who made the allegedly defamatory statement at issue, when other critical details are alleged.

Connecticut courts afford a number of special defenses to defamation claims, whose appropriateness "depend[s] on the nature of the statements alleged to have been made," and thus, "[i]f the plaintiff's pleadings are nebulous as to the identity of the speaker, audience and the type of statements made, it may be difficult for the defendants to plead any appropriate special defenses." *Lamson v. Farrow*, 53 Conn. L. Rptr. 298 (Conn. Super. Ct. Jan. 10, 2012). Nevertheless, "a review of the available special defenses for defamation shows that," where "the plaintiff has alleged that the defendant, a private Connecticut company, has made defamatory statements, through its employees or agents," even though "the plaintiff has not named the particular employees or agents of the defendant who made the defamatory remarks," "the plaintiff has alleged adequately specific information to put the defendant on notice of the claims made against it so that a relevant defense can be advanced." *Roman v. United Illuminating Co.*, No. CV146044689S, 2015 WL 3555343, at *4, 2015 Conn. Super. LEXIS 1096, at *14-15 (Conn. Super. Ct. May 12, 2015).

In this case, Mr. Bailey has alleged that statements were made falsely claiming that he had been terminated from ESPN for embezzling a large sum of money, that these statements were made after his termination and during the 2014 school year, and that they were made to parents at his children's school, including Kim Dobie, by an "ESPN Source." The Complaint thus alleges the timing and the specific content of the alleged statement, the identity of one of the individuals to whom the statement was published, and that the individual who made the alleged statements was an employee of ESPN who was identified by the recipients of the statements as an "ESPN Source." With these allegations, Defendant has "sufficient notice of the

communications complained of," and the more particular details may be drawn out in discovery. *Cf. Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000) (observing the importance of "recogniz[ing] the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment" and noting that "a plaintiff may allege facts suggestive enough to warrant discovery, even where those facts alone would not establish a cause of action for defamation").[6]

The motion to dismiss the defamation claim therefore is DENIED.

## III.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is: GRANTED with respect to Count Eight and Count Nine; DENIED with respect to Count Five and Count Seven; and GRANTED with respect to Count One, Count Two, and Count Six, insofar as these counts directly relate to benefit plans covered by ERISA, and otherwise DENIED.

**SO ORDERED** this 29th day of July, 2015, at Bridgeport, Connecticut.

              /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[6] Of course, if discovery yields no evidence to corroborate these allegations, the claim must be dismissed at the summary judgment stage.